## AMERICAN CRAYON CO. v. PRANG CO.
## PRANG CO. v. AMERICAN CRAYON CO.
### Nos. 4024, 4050.

Circuit Court of Appeals, Third Circuit.

Feb. 11, 1930.

C. P. Goepel, of New York City, Russell K. Ramsey and Charles E. Frohman, both of Sandusky, Ohio, and William G. Mahaffy, of Wilmington, Del., for American Crayon Co.

David A. Woodcock and Clifford E. Dunn, both of New York City, Chas. F. Curley, of Wilmington, Del., and Duell, Dunn & Anderson, of New York City, for Prang Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below, the American Crayon Company, a corporation of Ohio, hereafter called American, filed a bill against the Prang Company, a corporation of Delaware, hereafter called Prang-Delaware, charging trademark infringement and unfair competition. Thereupon the latter filed a counterclaim charging the former with like offenses. On final hearing, the court dismissed both complaints, whereupon each party took an appeal.

The proofs tended to show that from 1856 on the Prang Company, a corporation of Maine, hereafter called Prang-Maine, had built up an extensive business in school and art supplies. It had some seventy or eighty articles which were sold under the name of "Prang." So valuable had the trade-name "Prang" become that on March 1, 1918, by written contract, Prang-Maine, in consideration of $60,000, sold and assigned certain rights thereto to American. This contract is all important, as it determines the several rights and obligations of the parties here litigant. In its recitals it stated that for forty years Prang-Maine "had been engaged in the business of dealing in artists' and school supplies of various kinds, and in pursuance of said business have manufactured and have employed factories to manufacture for them the various commodities dealt in by them." It further recited "that said commodities included the dealing in, manufacture, and sale of all kinds of crayons, pastels, oil and water color paints, pencils, pens and erasers." And also that during said period of time have adopted and used certain trade-names to designate their goods to the public and have also adopted and used a monogram design of the initials "P. Co." The contract further recited that "the several trade names and especially the name 'Prang,' as well as the monogram design 'P. Co.' as applied to the various commodities dealt in by the Prang Company have become well and favorably known throughout the country and abroad," and "by reason thereof have become of great value." It further stated the Prang Company desired "to discontinue manufacturing or dealing in * * * crayons, pastels, oil and water color paints, pencils, pens and erasers to which commodities the trade names and monogram design have been applied." It further recited that the American Company purposed

dealing in said articles and "desires to acquire from The Prang Company the exclusive right, title and interest of The Prang Company to the trade names adopted and used by it, including the use of the name 'Prang Co.' and the monogram design 'P. Co.,' designating the said commodities and as applied to them."

The contract "in consideration of the premises" further recites:

The Prang Company sells to the American "all its exclusive right, title and interest in and to the said trade names and monogram design, hereinafter enumerated, as the said trade names and designs have been heretofore applied to crayons, pastels, oil and water color paints, pencils, erasers and pens, whether such application be to the articles themselves or to the packages or cartons in which the same are contained and sold ＊ ＊ ＊

"(a) The name 'Prang' as applied to all of said commodities, with or without numbers or in combination with any other word or design.

"(b) The monogram design 'P. Co.' as applied to said commodities."

Such being the contract rights of the American Company, the Maine Company, on February 2, 1925, assigned its remaining rights to the Prang Company, a corporation of Delaware, hereafter called Prang-Delaware. The latter really stands in the place of Prang-Maine and we dispose of the case as though it were one between Prang-Maine and American under the contract.

■ Turning first to the contract rights of the plaintiff which have been violated by the defendant, we are of opinion that so far as the specified articles, viz., "all kinds of crayons, pastels, oil and water color paints, pencils, pens and erasers," are concerned, the Prang-Maine gave up everything of a Prang name, character or mark to the American. This they have not done. While Prang-Maine, and therefore Prang-Delaware, were allowed, under certain circumstances mentioned in the contract, to sell such articles when made by other makers, they could only do so when such goods were disassociated in the minds of the public from the name Prang. This it has not done. Instead of taking the goods of other makers and selling them in cartons and containers bearing the names of such other makers, and otherwise identifying the goods as non-Prang in origin, they have used cartons which resembled those of the original Prang-Maine ones. They have not placed the name of the real makers on them. As their own corporate name included the

word "Prang" and they did business under a Prang corporate name, confusion and misleading in the minds of buyers inevitably followed. Prang-Delaware has used the words "Prang monogram." The Prang-Maine Company had, prior to its sale to American, used on its containers of colored paper the trade name "Prismex" and had advertised such paper as "Prang's Prismex Papers." This trade-name the Delaware Prang Company wrongfully appropriated, using the slogan "When you see Prismex think of the Prang Company," and "Prismex is the new name for the old Prang quality." We agree with the court below that Prang-Delaware "so advertised that slogan and definition as to make Prismex a synonym for Prang," and that "the use under these circumstances of the word Prismex on defendant's paint and crayon boxes was the equivalent of the use thereon of the forbidden word "Prang." Moreover, they have used a carton of the same size, color, and indentation as the original Prang boxes. They have omitted to place thereon the name of the company whose product it and its contents are, and on such box they have placed the Prang monogram. All these acts were in violation of the contract, and continuance thereof should be enjoined.

■ On the counterclaim we think the defendant is also entitled to injunctive relief. The contract, as we have noted, was not all-inclusive as regards Prang products, but only included "crayons, pastels, oil and water color paints, pencils, pens and erasers." But instead of confining its Prang rights to such specified articles, the plaintiff has claimed a virtually exclusive right to all articles of school and artist use. For example, Prang-Maine had, prior to the contract, made and sold a paste labeled and known as "Stixit" or "Prang Stixit." Such paste, or indeed any paste, was not included in the sale, yet the plaintiff, before the bill was filed, changed the named of its paste "Kroma" to "Stixmore" obviously for the purpose of appropriating the "Stixit" or "Prang Stixit" paste and good will which the Maine-Prang did not assign by the contract and therefore retained. So also modelling clay was not covered by the contract, and Maine-Prang was entitled to market its clay by the name "Permodello" or "Prang Permodello," and defendant's right to make and market such clay as a Prang product the plaintiff wrongfully sought to take away by dropping the first syllable of defendant's name, "Perm," and retaining the second "Dello." In these regards, an injunction should issue against the plaintiff. Without referring in detail to the several other

450

questions raised, all of which have been duly considered, we confine ourselves to one other point, namely the dismissal of both bills on the ground that both parties have been guilty of improper conduct. While we agree with the court that both parties are at fault, in that each has violated the provisions of the contract, we regard such conduct as the almost inevitable sequence of an attempt by contract to separate and divide the use of a single name in trade. The unwisdom, indeed the almost impossibility of such a splitting up of an earmark of trade is apparent, but all the same both parties agreed to do it initially. Both helped to create the confusion, and the consequent violation of rights may possibly be attributed more to business zeal and insistence on supposed rights than to rank dishonesty.

The order dismissing both complaints will be vacated, and the cause remanded for the issue of injunctions in accordance herewith. Under the circumstances, the costs in this and the court below will be equally divided and no accounting made by either party.