**McKESSON & ROBBINS, Inc., v. CHARLES H. PHILLIPS CHEMICAL CO.** *

No. 292.

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1931.

Taylor, Durey, Pierson & Comley, of Stamford, Conn. (H. H. Ramsay and Edward S. Rogers, both of New York City, Allen M. Reed, of Chicago, Ill., and Norris E. Pierson, of Stamford, Conn., of counsel), for appellant.

Marsh, Stoddard & Day, of Bridgeport, Conn. (Harry D. Nims and Wallace H. Martin, both of New York City, and Vincent L. Keating, of Bridgeport, Conn., of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit brought under section 4915 of the U. S. Revised Statutes (35 USCA § 63) to obtain the cancellation of two trademark registrations of the defendant. One, No. 46,225, was a registration of "Milk of Magnesia," September 12, 1905, and the other, No. 75,501, was a registration of "Leche-de-Magnesia," October 12, 1905. Each of these registrations was taken out under the so-called ten-year clause of the act of 1905. That clause allowed the registration of any mark used in interstate or foreign commerce by the applicant, or by his predecessors in title, which was in "actual and exclusive use * * * for ten years next preceding February twentieth, nineteen hundred and five."

The trial judge held that the registration of each mark was invalid because neither was in exclusive use by the defendant or its predecessors for the ten-year period. He accordingly granted a decree to the complainant canceling the registrations. The defendant has appealed and contends:

(1) That the court below was without jurisdiction to entertain this proceeding so that the bill of complaint should be dismissed for lack of jurisdiction.

(2) If that court had jurisdiction, it rendered a wrong decision, for the registrations were each valid, so that the bill should be dismissed on the merits.

*For opinion on rehearing modifying decree, see ·53 F.(2d) 1011.

■ We must first consider the right of the District Court to entertain this suit. After the trade-marks in question had been registered, an application to cancel the registrations was filed in the Patent Office by complainant's predecessor, June 25, 1924. The Examiner of Interferences dismissed this cancellation proceeding, and, on appeal to the Commissioner, his action was affirmed. An appeal was then taken on June 3, 1926, from the Commissioner to the Court of Appeals of the District of Columbia to which the case was submitted on November 16, 1927. They rendered a decision on December 5, 1927, affirming the Commissioner, which is reported sub nomine. McKesson & Robbins, Inc., v. Chas. H. Phillips Chemical Co., 57 App. D. C. 342, 23 F.(2d) 763. On October 4, 1928, this suit was started.

Section 9 of the Trade-Mark Act 1905 (15 USCA § 89) provides that, where an applicant is dissatisfied with the decision of the Commissioner of Patents, he may appeal to the Court of Appeals of the District of Columbia, and that the same rules of practice and procedure shall prevail in every stage of the proceedings as govern an applicant to a patent or a party to an interference.

The Supreme Court has held that under that section the procedure in applications for patents is to be applied to proceedings for the cancellation of trade-marks. United States ex rel. Baldwin Co. v. Robertson, 265 U. S. 168, 44 S. Ct. 508, 68 L. Ed. 962. Now, under section 4915 of the Revised Statutes, before its amendment in 1927, whenever an application for a patent was refused either by the Commissioner or by the Court of Appeals of the District of Columbia, the applicant might have a remedy by bill in equity.

After the complainant had taken its appeal to the Court of Appeals of the District of Columbia, and while the appeal was still pending, section 4915 was amended, on March 2, 1927 (section 11 [35 USCA § 63]), to take effect May 2, 1927, so as to read as follows: "Whenever a patent on application is refused by the Commissioner of Patents, the applicant, unless appeal has been taken from the decision of the board of appeals to the Court of Appeals of the District of Columbia, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal. * * *"

This amended section, if taken alone, would preclude the present bill in equity, for the appeal to the Court of Appeals of the District of Columbia was "pending" at the time the amendment went into effect on May 2, 1927. But the amending act contained a saving clause (44 Stat. 1335, 1337, § 15 [35 USCA § 7 note]) providing that it should "not affect appeals then pending and heard before the examiners in chief or pending before the Commissioner of Patents or in the Court of Appeals of the District of Columbia, and that in all cases in which the time for appeal from a decision of the examiners in chief or of the Commissioner of Patents * * * had not expired at the time this Act takes effect, appeals and other proceedings may be taken under the statutes in force at the time of approval of this Act as if such statutes had not been amended or repealed."

It was the object of the amendment, not (unhappily) to cut short, but to eliminate a single step in the "labyrinthine trodden ways" of patent solicitors by compelling them to rest on their appeal to the Court of Appeals of the District of Columbia, or, in the alternative, to forego it before they started on new peregrinations in a court of equity with long vistas of appeals in prospect. Yet it can hardly have been the purpose of Congress to take these particular wanderers by surprise and suddenly cut off their bill in equity for which indeed they say they have saved most of their "thunder." It must be remembered that McKesson & Robbins might well have felt forced, under the practice existing before the amendment, to take the appeal to the Court of Appeals of the District of Columbia in order to get the right to file a bill in equity at all. In spite of the alternative provision of the original section 4915, the following decisions seem to have regarded such an appeal as a condition precedent to filing a bill. Smith v. Muller (C. C.) 75 F. 612; McKnight v. Metal Volatization Co. (C. C.) 128 F. 51; Cooper v. Robertson (D. C.) 38 F.(2d) 852. But in any event McKesson & Robbins had the right to take such an appeal at the time when they took it, and, as the law then stood, they had the right to file their bill if the appeal was decided against them. The most appellant can say for the drastic construction of the amendment for which it contends is that McKesson & Robbins could have withdrawn their appeal after the act went into effect, and only by doing this could they acquire the right to file a bill in equity. Such an annihilation of a pending proceeding is a surprising result to flow from the saving clause of the amendment, and seems to us most unlikely. The com-

344

plainant did not take its appeal to the Court of Appeals of the District of Columbia as the substitute for a bill in equity, but as a lawful and perhaps necessary step toward filing its bill in the District Court. If the words of the saving clause that "it shall not affect appeals then pending and heard * * * in the Court of Appeals of the District of Columbia" be taken to relate to no more than the particular processes then before the Court of Appeals, they were wholly superfluous, for there was nothing in the amending act that curtailed such appeals. The amending act merely gave appeals to the Court of Appeals of the District of Columbia final effect and precluded a supplementary bill in equity in the cases to which the act applied. If the words "shall not affect appeals then pending" are to mean anything, they must be taken to relate not to the mere decision of the appeals, but to their status and real effect. This effect under the old practice was, among other things, to lay a foundation for a further proceeding by bill in equity.

In addition to this, the saving clause expressly preserves not only appeals, but "other proceedings" under the existing statutes where the time to appeal from a decision of the Examiners-in-Chief, or of the Commissioner, has not expired. This clause has been construed to permit in such cases the old procedure including the filing of a bill in equity after the appeal to the Court of Appeals of the District of Columbia has been decided. Fahrenwald v. Cope (D. C.) 38 F. (2d) 251; Berry v. Robertson (D. C.) 40 F.(2d) 915; Hammel v. Robertson, 60 App. D. C. 42, 46 F.(2d) 839. It would seem strange that all the old rights should be saved to an applicant who had got no farther than the Examiners-in-Chief, and taken away from an applicant who had got as far as the Court of Appeals of the District of Columbia. The whole tenor of the saving clause is to preserve existing remedies in all pending proceedings, and we feel reasonably clear that the objection to jurisdiction is not well taken.

█ The District Judge held that the trademarks were not in actual and exclusive use of the complainant, or his predecessors from whom he derived title for ten years next preceding February twentieth, nineteen hundred and five. He relied on the proof of use by Nelson Baker & Co. between 1898 and 1900, and by H. J. Mulford, of Philadelphia, dur-

ing 1904, of the mark "Milk of Magnesia." Nelson Baker & Co. published price circulars which listed "Milk of Magnesia" among other supplies and had labels printed containing the mark which were doubtless affixed to the goods. Labels were also issued by Mulford which were doubtless used on the merchandise. There was undisputed proof of sales of "Milk of Magnesia" by other persons under the label during the statutory period.

The use of the term "Milk of Magnesia" in printed matter relating to Pharmaceutical preparations is very old, and the term is certainly descriptive. It could only be appropriated by the defendant and its predecessors if they showed that it had acquired a secondary meaning so that it described defendant's goods, rather than those of others.

Section 5 of the Federal Trade-Mark Act of February 20, 1905 (15 USCA § 85), allows registration in such cases and for that reason requires "actual and exclusive use as a trade-mark of the applicant, or his predecessors from whom he derived title for ten years next preceding February 20, 1905." It is a somewhat serious thing to allow words that have long been used to describe merchandise to become the permanent symbol of the goods of one person. If he is to be given any such exclusive right, he should be required to prove his case strictly before securing any advantage. While the use of the mark during the ten-year period by others than the defendant was not very considerable, yet we think it was enough to prevent the latter from obtaining registration of "Milk of Magnesia." But the defendant has no right to registration of the mark "Milk of Magnesia" for another reason. Not only was the mark not exclusively used by defendant or its predecessors during the ten-year period, but since that time there has grown up a very large use which defendant has made no effort to stop. Indeed, defendant did nothing to protect the mark until 1924, when its validity was challenged by the complainant in this very proceeding to cancel the registration. Prior to 1924 a large business had grown up in which the mark was used in connection with sales of "Milk of Magnesia." American Druggists' Syndicate started to sell goods under this mark in 1912, and in that year sold in excess of 50,000 bottles. The sales increased by leaps and bounds year after year, until in 1923 they were in excess of 2,000,000 bottles, and they multiplied further after that year. E. R. Squibb & Sons sold 450,000 pints of "Milk of Magnesia" under the label between

1909 and 1916, and have continued sales ever since, which aggregated 4,000,000 pints between 1922 and 1928. H. K. Mulford Company began selling small quantities under the label in 1904, and after 1908 sold sizable quantities which finally increased to 50,000 pints per year in 1926, 1927, and 1928. Nelson Baker Company not only made sales during the ten-year period, as heretofore stated, but since 1916 have sold in larger quantities which in 1929 reached 20,000 gallons. Frederick Stearns & Company have manufactured and sold since 1910, and their sales had reached 20,000 gallons of "Milk of Magnesia" per year at the time of the trial. Park, Davis & Co. during the year 1905 sold in excess of 20,000 pints, and since 1912 have sold 100,000 pints per year.

"A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." Prestonettes, Inc., v. Coty, 264 U. S. at page 368, 44 S. Ct. 350, 351, 68 L. Ed. 731. It is hard to see how one can have the right to forbid the use of a trade-mark when that use has for many years become so general that the mark no longer indicates the origin of the goods sold under it. Between the date of registration (September 12, 1905) and the time when the cancellation proceeding was begun (June 25, 1924), the defendant had allowed a large competitive trade to grow up in merchandise sold under the mark, had taken no steps whatever to assert its rights, and had really ignored the extensive use by others. It is true that after the cancellation proceeding was instituted, the defendant sought to sustain and retain the registration, but even then it never brought any suits to stop infringements.

An extensive, persistent, and adverse use by the public during the long interval, prior to the cancellation proceeding, is indisputably shown, while the extent of defendant's own use is little indicated. The failure of the defendant during a long period to assert or enforce its rights and its essential disregard of the trade-mark is proof of an intent to abandon. We hold that the complainant must prevail not only because the trade-mark "Milk of Magnesia" was not in the actual and exclusive use of the defendant, or its predecessors, during the ten years prescribed by the statute, but also because the defendant abandoned the mark. Pflugh v. Eagle White Lead Co. (C. C. A.) 185 F. 769; Dietz v. Horton Mfg. Co. (C. C. A.) 170 F. 865; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; French Republic v. Saratoga Vichy Spring Co., 191 U. S. 427, 24 S. Ct. 145, 48 L. Ed. 247.

The right to register the mark "Leche-de-Magnesia" stands on a different footing. There is no proof whatever that this mark was not in actual and exclusive use as a trade-mark of the applicant or its predecessors for ten years preceding February 20, 1905. It has, therefore, made at least a prima facie case as to this mark. It is no answer to say that it is descriptive because the ten-year provision of the Trade Mark Act of 1905 enabled trade-marks for descriptive words which had acquired a secondary meaning to be registered. Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 S. Ct. 648, 58 L. Ed. 1046. The use of "Milk of Magnesia" during the ten-year period does not affect the mark "Leche de Magnesia." It is true that, if the defendant was relying on a common-law trade-mark which was invalid because it was a descriptive term, a translation of the English words into Spanish might not, upon the mere theory that it created a fanciful name, avoid the difficulty; but the ten-year clause protects any name, whether descriptive or otherwise, if it was exclusively used by the applicant for the prescribed period. Because of this, we think the defendant is entitled to the trade-mark "Leche-de-Magnesia."

The decree is reversed, with directions to dismiss the bill so far as it relates to the mark "Leche-de-Magnesia," and is otherwise affirmed.