BROWNING KING CO. OF NEW YORK, Inc., v. BROWNING KING CO., Inc., et al.

Nos. 9779, 9780.

United States Court of Appeals
Third Circuit.

Argued June 10, 1949.

Decided July 12, 1949.

Rehearing Denied Aug. 5, 1949.

106

Abraham L. Freedman, Philadelphia, Pa. (Bernard Eskin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., George Trosk, New York City, on the brief), for Browning King Co. of N. Y., Inc.

Frank Fogel, Philadelphia, Pa. (Caesar & Rivise and Frank Fogel, A. D. Caesar, C. W. Rivise, Philadelphia, Pa., on the brief), for Browning King Co., Inc., and others.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an action for common law trade name and trade mark infringement and unfair competition. The plaintiff, a New York corporation with stores located in New York and New Jersey, seeks to enjoin the defendants, a Pennsylvania corporation with stores in Pennsylvania and Florida, and the corporation's principal shareholders and officers from using the name "Browning King" and certain trade marks associated with that name. It asks also that defendants be enjoined from representing that their stores are factory outlets for the same merchandise sold at higher retail prices in other stores, including those of the plaintiff. The District Court enjoined the defendants from continuing the alleged unfair practices, but did not enjoin defendants' use of the name "Browning King" and certain of the trade marks associated with that name. Both sides have appealed.

We note at the outset that the case is in federal court for diversity of citizenship only. Pennsylvania law controls. Anheuser-Busch, Inc. v. DuBois Brewing Co., 3 Cir., 1949, 175 F.2d 370. We do not, however, find in our consideration of this case any point on which the law of Pennsylvania differs from rules prevailing elsewhere.

This lawsuit has its beginnings in the bankruptcy of the Browning King clothing business which operated 17 stores in 13 states under one controlling corporation for many years until 1934. In that year the assets of the enterprise were sold, and the stores in the various cities were acquired by separate purchasers. The plaintiff's predecessors acquired the New York and New Jersey stores, and the right to use the name "Browning King" and the trade marks of Browning King clothing in those areas. Excluded, however, from the plaintiff's purchase was the store at Ithaca, New York; also the part of the Browning King business having to do with the sale of uniforms. The defendant corporation claims it acquired similar rights at the sale of the Browning King store in Philadelphia. This the plaintiff disputes.

The plaintiff's appeal charges error on the part of the Trial Judge because he did not enjoin the defendants from using the trade name "Browning King & Co." and the trade marks related to it. Plaintiff says, first, that a trade name cannot be conveyed in gross as this one was, if conveyed at all, to these defendants. It says, second, that even had it been so conveyed, the defendants have lost their right to use the name by abandonment. And, third, plaintiff says that the evidence to support any transfer to or use by the defendants is exceedingly flimsy and should not be credited.

We do not doubt the correctness of the plaintiff's legal proposition that trade marks and good will cannot be transferred in gross. They are an integral part of a business and go with a business.[1] It

---

[1] Adam Hat Stores Inc. v. Monroe Shirt Co., 1944, 143 F.2d 993, 31 C.C.P.A. Patents, 1251; American Broadcasting Co. v. Wahl Co., 2 Cir., 1941, 121 F.2d 412; Restatement, Torts § 755 (1938); 1

Nims, Unfair Competition and Trade-Marks § 17 (4th ed. 1947). Cf. 2 Callmann, Unfair Competition and Trade Marks § 78.1, p. 1045 (1945). Andrew Jergens Co. v. Woodbury, Inc., D.C.D.

is settled, too, that an intent to abandon may be proved by lack of continued use and other circumstances.[2] We agree, also, that the evidence is not, to us, very clear or convincing that there was continuity of use by the defendants.

But all this does not add up to a use of the Browning King name of which the plaintiff can complain. The plaintiff may, no doubt, use the Browning King name in New York and New Jersey, where it bought going businesses. But the plaintiff has no exclusive right to the Browning King name even in the state of New York. The part of the business which had to do with the making and sale of uniforms was transferred to a concern other than the plaintiff. Nor did plaintiff get the Browning King store in Ithaca, New York. But even had plaintiff acquired exclusive right to the Browning King name in New York, that fact does not operate to preclude use of the name by the purchaser of the Browning King business somewhere else.

█ The sale of the Pennsylvania business, however, was a separate affair carried on by the Pennsylvania state court receiver. He sold the merchandise out in parcels. If, as plaintiff contends, nobody acquired, through the receiver's sale, the right to the trade name, good will and trade marks of the corporation known as Browning King & Co. of Philadelphia, then, we take it, the trade name is not the exclusive property of anyone. It lies in the public domain.[3] Defendants or anyone else are entitled to use it, subject to the

highly important qualification that in such use there must not be any deception of the public as to the identity of the merchant with whom customers do business.

█ The necessary conclusion, therefore, on this part of the case is that the use of the Browning King name per se is not a tort against the plaintiff. It cannot, therefore, have the use of the name by the defendants enjoined. The Trial Judge was right in his conclusion on this phase of the case.

We pass, therefore, to the questions which are presented in the defendants' appeal. The Trial Judge found the defendants guilty of certain matters of deception and enjoined them against their continuance. The defendants, realizing that a recognition of the right to use the Browning King name is a Pyrrhic victory if their advertising style is to be cramped by the limitations put on the use by the Trial Judge, have cross-appealed.

█ The principal point the defendants make is that the findings adverse to them are clearly erroneous and call for reversal under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The Trial Judge found, and it is not disputed, that the defendant corporation advertised "Browning King" products in a nationally circulated magazine, with a list of prices higher than those charged in its stores. These higher prices were indentified as "nationally advertised prices." The advertisement gave the locations of the defendants' stores

Del.1921, 273 Fed. 952, affirmed 3 Cir., 1922, 279 F. 1016, and American Crayon Co. v. Prang Co., 3 Cir., 1930, 38 F.2d 448, are in accord with the rule stated. In those cases the principle is merely applied to a transfer of a portion of a business with the right to use the trade name as to the products of that portion.

[2] Tygert-Allen Fertilizer Co. v. J. E. Tygert Co., 1899, 191 Pa. 336, 43 A. 224; Manz v. Philadelphia Brewing Co., D.C. E.D.Pa.1940, 37 F.Supp. 79; Restatement, Torts § 752 (1938); 2 Nims, Unfair Competition and Trade-Marks § 408 (4th ed. 1947); 2 Callmann, Unfair Competition and Trade Marks § 79 et seq. (1945).

[3] When a company goes out of business, the good will is destroyed and the trade name abandoned. No rights arise by succession from a later sale of the good will as a separate item. Any new rights in the name must be established by the new user. Reconstruction Finance Co. v. J. G. Menihan Corp., D.C.W.D.N.Y.1939, 28 F.Supp. 920; Storm Waterproofing Corp. v. L. Sonneborn Sons, Inc., D.C.D. Del.1929, 31 F.2d 992; 1 Nims, Unfair Competition and Trade-Marks § 17, p. 87 (4th ed. 1947). On the subject of abandonment by non-user in a particular territory, see United Drug Co. v. Theodore Rectanus Co., 1918, 248 U.S. 90, 39 S. Ct. 48, 63 L.Ed. 141; Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; 2 Nims, op. cit. supra, § 408, p. 1270.

in the Philadelphia area, identifying them as "Factory Showrooms in the East." It also invited merchants to apply for Browning King "franchises * * * if not represented in your city." This advertisement was then used as a basis for extensive local advertising calculated to create the public impression that merchandise sold nationally in Browning King stores could be bought at lower prices in defendants' stores because they were factory outlets. Large signs identified these stores as "Factory Showrooms." Price tags carried the higher "retail" price and below it the lower "factory showroom" price.

All this is clear from the record. There is ample support also for the finding, which defendants vigorously attack, that they were not manufacturers and that they did not sell clothing at manufacturers' or wholesale prices. It is true that defendants offered some testimony that clothing was contracted out for manufacture and that sales were made to wholesalers and retailers. There was proof, however, only of isolated manufacturing or wholesale transactions, aside from transfers between defendants' own stores or those in which they have an interest. There is no doubt that defendants' own business was almost entirely if not all retail. Finally, the testimony concerning defendants' adoption of the mark "Windsor Hall," with labels similar in detail to plaintiff's mark "Windsor House," leaves no doubt of the correctness of the Trial Judge's finding on this point that the defendants were endeavoring to trade on the value of the plaintiff's name.

The unfairness of defendants' practices in the situation where totally unrelated business units, all retail stores, were using the same names and marks in different areas is too plain for extended discussion. We conclude that the findings of the Trial Judge are well supported by the evidence, and that the scope of the decree is not too broad.

Defendants also contend that plaintiff is barred from obtaining relief because of its laches, that its president is unworthy of belief, and that, in an equitable proceeding, it comes into court with un-

clean hands. We think there is no merit in these contentions, and mention them only to indicate that they have not been overlooked.

The judgment of the District Court will be affirmed.