Yellow Cab Company of Biloxi, Inc., et al. *v.*
Checker Taxicab Owners' Association

No. 40796          June 9, 1958          103 So. 2d 350

*J. D. Stennis, Jr.*, Biloxi, for appellant.

*Morse & Morse,* Gulfport, for appellees.

ARRINGTON, J.

The Checker Taxicab Owners' Association filed bill for injunction in the Chancery Court of Harrison County on May 29, 1956 against the Checker Cab Company of Biloxi and the Yellow Cab Company, Inc., seeking to enjoin the defendants from using, or causing to be used, displaying, or causing to be displayed, contributing to, or aiding the use or display of the words ''Checker Taxicabs'', ''Checker Cab Company of Biloxi'' or any words so similar to ''Checker Taxicab'' as to be likely to deceive the public. A temporary injunction was issued on August 2, 1956. A final decree was entered on March 6, 1957, making the temporary injunction perpetual, from which decree, the defendants, appellants here, appeal.

The record in this case is voluminous, and a large number of witnesses testified relative to the history of the Checker Taxicab Company. The testimony shows that one Duke operated Yellow Cab and Checker Cab until the fall of 1952; that he defaulted on his lease contract with the owner of Yellow Cab and in December 1952, turned this over to one Earl Owen, who, sometime in December 1952, sold the Yellow Cab and Checker Cab to the present owners. Owen testified that at the time of the sale there were two or three Checker cabs that were in bad shape or ''beat up''. The testimony of other witnesses shows that Checker cabs were operated for a while in the year 1953. Glen L. Turner, a dispatcher for Yellow Cab and Checker Cab since December 1952, testified that the Checker cabs operated only three or four months in 1953. The testimony shows that thereafter no Checker cabs operated in the City of Biloxi until after February 21, 1956, when the appellees, Checker Taxicab Owners'

Association, appropriated the name and started the operation of Checker Cabs.

The testimony further shows that when the appellees started operating, Duke, vice president and manager of Yellow Cab Company, purchased three Checker cabs and started operating; that he also opened a bank account in March 1956, which account had been inactive since operations were ceased in 1953. Although the evidence was conflicting in many respects, it appears to be admitted by the appellant and the appellees that Checker cabs had been operating a number of years in the City of Biloxi when it was taken over by Yellow Cab Company, Inc., and that when the two or three cabs purchased by it wore out in the spring of 1953 and were junked, no other Checker cabs operated until after the appellees started their operation in February 1956.

The appellant admits that there were no Checker cabs operating in the Checker cab color, but contends that it was still doing business in the name of Checker Cab Company of Biloxi, by maintaining a telephone in said name, which was not listed in 1955, and that they had a sign in front of their building; that Checker cab had a deposit with the gas company and the power company in 1950, and were receiving services in the name of Checker Cab Company. They had a bank account in said name; they advertised in various ways and received water and sewage services in the name of Checker and Yellow Cab Company, and were doing business generally in the name of Checker Cab Company, although they had no Checker cabs operating and could not send one when called for, but would send a Yellow cab.

The appellants argue when the call came in for a Checker cab it made no difference whether they sent a Checker cab or a Yellow cab, and that they were doing business in the same manner as when they had Checker cabs operating on the streets. The appellants further contend that Yellow Cab Company, Inc., was still doing business

as Checker Cab Company, and contends that the trade name of Checker cab applies to the place of business and that they could operate for 20 years and even more in the name of Checker Cab Company without a cab on the streets bearing said name and still be protected in their trade name. We do not agree with this contention.

The final decree of the chancellor, in part, is as follows:

". . . . . the trade name of 'Checker Cab Company of Biloxi' adopted and used by James C. Duke, Jr., and his assignee successor, Yellow Cab Company of Biloxi, Inc., was subject to being lost by abandonment, and if so lost was subject to appropriation by others, and that the mere adoption by Yellow Cab Company of Biloxi, Inc., and its predecessors of the trade name 'Checker Cab Company of Biloxi without actual use thereof in the market was insufficient to give any exclusive right to its use, and that the failure of Yellow Cab Company of Biloxi, Inc., to have taxicabs operating on the streets of Biloxi, Mississippi, bearing the words 'Checker Cab' or 'Checker Cab Co. of Biloxi' or any similar name and the 'Checker' band thereon, for a period of more than two years prior to the formation of Checker Taxicab Owners Association and the use by said Association of the words 'Checker Taxicab' on taxicabs operated on the streets of Biloxi, Mississippi, constituted an abandonment by Yellow Cab Company of Biloxi, Inc. of the trade name 'Checker Cab Company of Biloxi', and Checker Taxicab Owners Association was free to appropriate the words 'Checker Cab' at the time of the formation of Checker Taxicab Owners Association and the use by them of the words 'Checker Taxicab' and the distinctive checker band circling the body of their taxicabs; that therefore the order of this Court rendered in said Cause on August 2, 1956, should be made perpetual; and that the injunction should be broadened and extended to prevent Yellow Cab Company of Biloxi, Inc., from using the distinctive checker band

circling their taxicabs and from advertising or otherwise doing business in the name of Checker Cab Company of Biloxi, and listing in the future with 'information' or in the printed director a telephone number under the name of Checker Cab Company; . . . ."

As stated above, the appellees' bill was filed on May 29, 1956. On May 30, 1956, the appellant filed bill for injunction to restrain the appellees from operating their taxicabs. On final hearing, the chancellor consolidated the two bills.

■ ■ Twelve assignments of error are argued by the appellant. The first three assignments are argued together and deal with errors in connection with the issuance of a temporary injunction. The fourth, fifth, sixth and seventh assignments are argued together and these likewise deal with errors alleged to have been committed before the final hearing. The general rule is that where on a final hearing a temporary injunction is made permanent, error in issuing the temporary injunction is not prejudicial. In 5 C. J. S., Appeal and Error, Section 1702, is found the following:

"An error in a proceeding related to an injunction does not justify a reversal of the final judgment or decree where such order does not prejudicially affect the substantial rights of the complaining party. Accordingly, error in granting, refusing, dissolving, continuing, or refusing to dissolve an injunction will not justify a reversal where the rights of the complaining party are not prejudicially affected thereby."

■ ■ There are two things an appellant must show in order to obtain a reversal of the judgment appealed from: (1) Error therein, and (2) that he was prejudicated thereby—that he was deprived of a substantial right. Cole v. Cole, 194 Miss. 292, 12 So. 2d 425.

■ ■ All the other assignments are likewise argued together. The appellant argues that it was manifest error for the trial court to find as a matter of law that

appellants had abandoned the use of the words "Checker Cab Company of Biloxi" in the operation of their business and that the name was subject to appropriation by others. Abandonment is largely a question of intention and all facts and circumstances and particularly acts and conduct of the parties are for the trier of the facts. Cf. Yellow Cab Corporation v. Korpeck, 198 N. Y. S. 865.

■■ ■ Appellant also argues that the court erred in finding that the appellants had abandoned the use of the Checker Cab Company of Biloxi, and that it was subject to appropriation, and that the decree of the court is contrary to the overwhelming weight of the evidence. We have carefully examined the evidence in this case and are of the opinion that it is ample to sustain the finding of the chancellor, and that the decree is not against the overwhelming weight of the evidence.

Affirmed.

*Roberds, P. J.,* and *Lee, Ethridge* and *Gillespie, JJ.,* concur.