**NORWICH PHARMACAL COMPANY,**
Plaintiff,

v.

**HOFFMANN–LA ROCHE, INC.,**
Defendant.

**Civ. A. No. 572–59.**

United States District Court
D. New Jersey.

Jan. 20, 1960.

Rogers, Hoge & Hills, by William F. Weigel, New York City, C. Donald Mohr, New York City, of counsel on the brief, Brogan & Wolff, by Henry F. Wolff, Jr., Jersey City, N. J., of counsel, for plaintiff.

Nims, Martin, Halliday, Whitman & Williamson, by Walter J. Halliday, New York City, Bert A. Collison, New York

City, of counsel on the brief, Raymond D. McMurray, Nutley, N. J., and Lorentz & Stamler, by Joseph Stamler, Newark, N. J. of counsel, for defendant.

HARTSHORNE, District Judge.

The parties here, two drug manufacturers, each complains that the other is infringing upon its trademarks and engaging in unfair competition, basing their complaint and counterclaim, respectively, not only upon diversity jurisdiction but upon the trademark jurisdiction provisions of the statute, 28 U.S.C.A. § 1338. Norwich now moves to strike Hoffmann's counterclaim under F.R.Civ.P. rule 12(b) (6), 28 U.S.C.A. as not stating a claim upon which relief can be granted.

In fact, Hoffmann's counterclaim is dual, but not separated into two counts, though counsel agree that for the purposes of the present motion this may be disregarded. The two claims upon which Hoffmann's counterclaim is based are (a) that the Norwich drug bearing the trademark Tricofuron, of antibacterial potency, infringes Hoffmann's rights under its anticoagulant drug Treburon and its alleged modification, the antimicrobial Triburon, (b) that Norwich's Tricofuron injures, or is likely to injure, Hoffmann with particular respect to its said drugs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a), because the Tricofuron label indicates its source as "Eaton Laboratories, Norwich, N. Y.", which Norwich admits for purposes of this motion does not exist.

■■ We turn to the first of such counterclaim bases, i. e., that Norwich's Tricofuron infringes Hoffmann's rights in its anticoagulant Treburon and its alleged modification, the antimicrobial Triburon. Treburon was registered in the United States Patent Office in 1952 as an anticoagulant. Hoffmann admittedly stopped using the name Treburon in 1953. Thus prima facie, but only prima facie, Hoffmann abandoned Treburon in 1955, 15 U.S.C.A. § 1127. In 1956 Norwich registered Tricofuron as an antibacterial drug. In 1957 Hoff-

mann did not file the required affidavit with the Patent Office as to Treburon "showing that said mark is still in use or showing that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark", 15 U.S.C.A. § 1058(a). In 1958 Hoffmann registered Triburon as an antimicrobial agent. Admittedly, Norwich's Tricofuron and Hoffmann's Triburon are competitive. As to Treburon, the difference between that name and Tricofuron is so distinct as to avoid confusion, let alone the fact that the fields of anticoagulants and antimicrobials differ. Furthermore, by its own admission, Hoffmann had allowed its trademark of Treburon to be cancelled thereafter in 1958. Therefore, since no present infringement of the mark can exist, Hoffmann has no basis for alleging such to be the case.

■ Since Tricofuron was registered three years before Triburon was registered, Hoffmann's rights in Triburon in this aspect, standing alone, are subject to Norwich's rights in Tricofuron. Hence, Hoffmann projects the argument that its rights in Triburon, first registered in 1958 as an antimicrobial, should be permitted to relate back to the registration seven years earlier of Treburon as an anticoagulant on the theory that Triburon is but a modification of Treburon. Hoffmann cites no authority for this unusual claim of relation back other than Beech-Nut Packing Co. v. P. Lorillard Co., 1927, 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810, and a reading of that case indicates that it does not support the theory. In that case the plaintiff did not have a completely different mark which the defendant's modification infringed. Instead plaintiff used the same mark that the defendant had originally used. The present case would only bear resemblance to *Beech-Nut* if Norwich were now using Treburon. Furthermore, the sole issue clearly covered in *Beech-Nut* was that of abandonment and that issue is not present here. How a trademark registered in 1958 can be considered legally as if registered six years ear-

lier, to the detriment of the drug of a third party registered meanwhile, quite without reference to the differing natures of the two Hoffmann drugs, is far from clear. Indeed, to permit this would create havoc in the whole field of trademark law. For instance, assume Company A had registered a trademark called Trilon and thereafter Company B registered its trademark in the clearly dissimilar name of Trason. If Company A were permitted to modify Trilon into Trison, and Trison were then to be given relation back to the date of the registration of Trilon, so that Trison would be considered earlier than Trason, Company B, which had first registered and owned Trason, might find itself an infringer of Company A, despite Company B's lawful action in obtaining the mark Trason in the first place. As can easily be seen, such a result would hardly create certainty in the area of trademark registration.

The rights of Hoffmann as against Tricofuron must stand or fall upon the basis of the trademarks which it now holds and as of the time they were in fact registered. Thus, as to Triburon, even disregarding the question of whether it and Tricofuron are *idem sonans*, since Norwich's Tricofuron was registered before Hoffmann's Triburon, Norwich's rights in this aspect are superior to those of Hoffmann, as a matter of law.

Turning to the second basis of Hoffmann's counterclaim, we consider the question of whether Norwich's representation that Tricofuron originated in the nonexistent "Eaton Laboratories, Norwich, N. Y." is a violation of Section 43 (a) of the Lanham Act, 15 U.S.C.A. § 1125(a). In arguing that it does not constitute such a violation, Norwich cites a series of cases, some decided before the enactment of the Lanham Act, and others after its enactment, applying a restrictive interpretation of such Act in line with this previously adopted judicial gloss. Mosler Safe Co. v. Ely-Norris Safe Co., 1927, 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578; American Washboard Co. v. Saginaw Manufacturing Co., 6 Cir., 1900, 103 F. 281, 50 L.R.A. 609; Chamberlain v. Columbia Pictures Corp., 9 Cir., 1951, 186 F.2d 923; Samson Crane Co. v. Union National Sales, D.C.Mass.1949, 87 F.Supp. 218, 222, affirmed 1 Cir., 1950, 180 F.2d 896. These cases generally go on the theory that what both the common law and the pertinent provisions of the Lanham Act prevent is the "palming off" of defendant's products as being those of plaintiff, so that prospective customers would be likely to buy the former thinking they were the latter.

On the other hand, the language of the provisions of the Lanham Act, Section 43(a), 15 U.S.C.A. § 1125(a), is so unambiguous that this Court has no right to disregard this clear expression of the intention of the Congress by applying a pre-existing judicial gloss thereto. Indeed, in this regard the viewpoint of this Court is concluded by the authority of L'Aiglon Apparel v. Lana Lobell, Inc., 3 Cir., 1954, 214 F.2d 649, 651, where the Third Circuit Court of Appeals says, alluding to these earlier cases:

"However, we reject this entire approach to the statute. We find nothing in the legislative history of the Lanham Act to justify the view that this section is merely declarative of existing law. Indeed, because we find no ambiguity in the relevant language in the statute we would doubt the propriety of resort to legislative history even if that history suggested that Congress intended less than it said. It seems to us that Congress has defined a statutory civil wrong of false representation of goods in commerce and has given a broad class of suitors injured or likely to be injured by such wrong the right to relief in the federal courts. This statutory tort is defined in language which differentiates it in some particulars from similar wrongs, which have developed and have become defined in the judge made law of unfair competition. Perhaps this statutory tort bears closest resemblance to the al-

ready noted tort of false advertising to the detriment of a competitor, as formulated by the American Law Institute out of materials of the evolving common law of unfair competition. See Torts Restatement, Section 761, supra.[1] But however similar to or different from pre-existing law, here is a provision of a federal statute which, with clarity and precision adequate for judicial administration, creates and defines rights and duties and provides for their vindication in the federal courts."

See also Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., D.C.S.D.N.Y. 1959, 23 F.R.D. 155; Parkway Baking Co. v. Freihofer Baking Co., 3 Cir., 1958, 255 F.2d 641; Gold Seal Co. v. Weeks, D.C.D.C.1955, 129 F.Supp. 928, affirmed S. C. Johnson & Son, Inc. v. Gold Seal Co., 1956, 97 U.S.App.D.C. 282, 230 F.2d 832. Section 43(a)[2] of the Lanham Act expressly provides that anyone who uses, in connection with any goods or services or any container or containers for goods, either "a false designation of origin, or any false description or representation" and causes such goods or serv-. ices to enter into commerce (which here admittedly occurred and is to be deemed to have been so alleged) "shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality s situated, or by any person

who believes that he is or is likely to be damaged by the use of any such false description or representation."

██ Admittedly there was no Eaton Laboratories at Norwich, N. Y., given as the geographic origin of Tricofuron, even considering the word "origin" as meaning solely the geographic source of the article. Again, if we look at the Eaton Laboratories as showing the production source of Tricofuron, i. e., as coming from a laboratory rather than from a mere manufacturing establishment, then there would be a "false description or representation" as to Tricofuron. As it was stated at the argument, without contradiction, that Hoffmann did business "in the region in which said locality [of Norwich, N. Y.] is situated," then there would be a false designation of origin considering same solely in the geographic sense. Furthermore, if there is a difference to consumers between the production of drugs in a laboratory and their production in an ordinary manufacturing establishment, as Hoffmann asserts, then there might well be a false description or representation in that regard. The further question, of course, remains whether or not, by either of the above false designations of origin, or false description or representation, Hoffmann is or is likely to be injured. In this regard, see *Parkway Baking Company v. Freihofer Baking Company,* supra. There the court said specific proof of injury is necessary to re-

---

1. Restatement of Torts, Vol. 4, Sec. 761, 1939.

"One who diverts trade from a competitor by fraudulently representing that the goods which he markets have ingredients or qualities which in fact they do not have but which the goods of the competitor do have is liable to the competitor for the harm so caused, if,

" '(a) when making the representation he intends that it should, or knows or should know that it is likely to, divert trade from the competitor, * * *.' "

2. 15 U.S.C.A. § 1125(a) "Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin, or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

cover damages, but all that is needed for injunctive relief is proof of the likelihood of injury. Such is the allegation of Hoffmann's counterclaim. In this aspect Hoffmann should be permitted to present its proof.

Accordingly, an order may be entered dismissing the Hoffmann counterclaim in the first aspect, but denying Norwich's motion to dismiss same in its second aspect.