SUTTON COSMETICS (P. R.) Inc. et al.,
Appellees,

v.

LANDER CO., Inc., Scott Chemical Co.,
Inc., Appellants.

No. 208, Docket 71–1722.

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1971.

Decided Jan. 25, 1972.

Hays, Circuit Judge, dissented and filed opinion.

Morton Amster, New York City, N. Y. (Alfred B. Engelberg and Amster & Rothstein, New York City, on the brief), for appellees.

Arthur H. Seidel, Philadelphia, Pa. (Allen L. Greenberg, McKeesport, Pa., and Seidel, Gonda & Goldhammer, Philadelphia, Pa., on the brief), for appellants.

Before LUMBARD, HAYS and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Appellants Lander Co., Inc., a Delaware corporation, and Scott Chemical Co., Inc., a New York corporation, [hereinafter Lander] were preliminarily enjoined by the district court for the Southern District from using the surname "Sutton" as a trademark in the sale of cosmetics and toiletries and from selling any Sutton products which Lander had produced and held in inventory.

Judge Metzner held that Lander's use of the trademark "Sutton" was a false designation of origin proscribed by section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because "Sutton" was already being used as a trademark in the sale of men's cosmetics by a competitior, Sutton Cosmetics (P.R.), a Puerto Rican corporation, which had made sales in Puerto Rico, Dade County, Florida and metropolitan New York City. As the record amply supports the conclusion that there was a sufficient showing of the likelihood that Sutton Cosmetics (P.R.) would prevail, the district court properly exercised its discretion in granting preliminary relief. With the single modification of limiting the geographical scope of the injunction to the areas in which Sutton Cosmetics (P.R.) has sold, we affirm.

The trademark "Sutton" was registered in 1952 in the United States Patent Office by Sutton Cosmetics, Inc.,[1] a New York corporation, for use in the cosmetic market.[2] On December 24, 1964, the registration was assigned to White Laboratories, Inc., a subsidiary of the Schering Corporation. From 1964 until the middle of September 1970, Schering and its subsidiary manufactured and sold Sutton deodorants throughout the United States, Puerto Rico and the Virgin Islands. In addition, Schering licensed others to engage in this activity under the mark "Sutton." Through Schering's efforts (and previously those of Sutton Cosmetics, Inc.), the Sutton mark had gained a substantial following among Spanish-speaking persons in the markets where Schering and its affiliates sold.

On June 4, 1970, Schering formally announced its intention to discontinue the manufacture and sale of Sutton products effective September 15, 1970. Schering also determined to abandon the mark "Sutton" rather than sell it or the goodwill attached to it.[3]

Cesar Castillo, Inc., a Puerto Rican corporation, had been one of Schering's wholesale customers in Puerto Rico for Schering's Sutton products. When Cesar Castillo, its president, learned that Schering intended to discontinue the Sutton line and abandon the Sutton mark, he attempted to buy the entire line of business in Puerto Rico. Schering refused to sell the trademark, but was willing to sell its inventory and packaging. Castillo then arranged to buy from Schering a great part of the Sutton inventory including finished Sutton goods, raw materials, molds to make Sutton products, empty product packages, display materials and shipping cartons—all of which were imprinted with the Sutton trademark and Sutton's distinctive package design, a blue-and-white stripe with diagonal emblem.

Sutton Cosmetics (P.R.) Inc. had been formed on June 29, 1970 as a subsidiary corporation of Castillo for the purpose of carrying on the Sutton business. With the acquisition in September of the Sutton inventory from Schering, Sutton Cosmetics (P.R.) began its sales of Sut-

---

1. Appellee Michael D. Goldsmith was then the "owner" of Sutton Cosmetics, Inc. and the Sutton mark which was subsequently sold to Schering. When Schering announced its intention to abandon the Sutton mark, Goldsmith made an attempt to recapture the mark to his own use, eventually joining, on September 30, 1970, with Cesar Castillo, Inc.

2. Sutton Cosmetics, Inc. actually had registered the Sutton mark twice: No. 591,-518 was filed October 24, 1952 and No. 694,359 was filed January 15, 1954.

3. Apparently for tax reasons, Schering refused to sell the mark or the goodwill attached to it.

ton products which, of course, were marked and packaged exactly the same as the products which had been sold by Schering. From late September 1970 on, it sold Sutton products in Puerto Rico, Dade County, Florida, and metropolitan New York City.

The remainder of the Schering Sutton inventory not sold to Sutton Cosmetics (P.R.) evidently was sold to only two other purchasers, P. Daussa Corporation and E. W. Abrahams & Sons, Ltd. P. Daussa was Schering's German and Austrian distributor and E. W. Abrahams manufactured Sutton products under license from Schering and sold these products in Jamaica, B.W.I. P. Daussa resold to Sutton Cosmetics (P.R.) a substantial portion of the Sutton inventory that it had purchased from Schering. E. W. Abrahams apparently resold its Sutton products in Jamaica, B.W.I.

Lander had not purchased any Sutton inventory from Schering, but in May 1970, prior to any Sutton sales made by Sutton Cosmetics (P.R.), Lander had made one sale of $45 worth of cosmetics labelled "Sutton" to a drug retailer in the New York metropolitan area. Though denominated "Sutton," these products were packaged with a yellow label quite different from the blue and white packaging used by Schering and later by Sutton Cosmetics (P.R.). In February 1971, Lander began to sell regularly a stick deodorant packaged similarly to Sutton Cosmetics (P.R.)'s deodorant in the same markets where Sutton Cosmetics (P.R.) sold. Lander's product was also called "Sutton" and the container had the same design on it as the one used by Sutton Cosmetics (P.R.) and previously by Schering. Lander attempted to sell its Sutton product by circulating advertising fliers which stated "Just what you wanted—the *Sutton Boys* are back with a terrific introductory offer" and by offering two stick deodorants for the price of one. As a result of Lander's sales efforts, at least two buyers cancelled their pending orders with Sutton Cosmetics (P.R.) and placed their orders for Sutton products with Lander.

Sutton Cosmetics (P.R.) then brought this suit seeking permanent injunctive relief enjoining Lander from using the mark "Sutton" in the sale of cosmetics. After hearing testimony and considering the depositions of both parties, the district court found the facts substantially as recited above and on May 7, 1971, granted preliminary relief, holding that Lander's conduct had violated section 43(a) of the Lanham Act apparently on the ground that Lander's use of the Sutton mark constituted a "false designation of origin" within the meaning of the statute. We agree with the issuance of the preliminary injunction as there was a sufficient likelihood that Sutton Cosmetics (P.R.) would prevail on the merits.

Section 43(a) of the Lanham Act provides:

> Any person who shall affix . . . or use in connection with any goods, . . . a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

A seller who deliberately passes off his goods as those of his competitor has falsely designated the origin of the goods within the meaning of section 43(a). Pantrone, Inc. v. A. I. Friedman, Inc., 294 F.Supp. 545, 552 (S.D.N.Y.1968); Crossbow, Inc. v. Dan-Dee Imports, Inc., 266 F.Supp. 335, 339–340 (S.D.N.Y.1967); Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405 (6th Cir. 1963); Chamberlain v. Columbia Pictures Corp., 186 F.2d 923, 925 (9th Cir. 1951).[4] Deliberate use of a

---

4. Passing off does not exhaust the full reach of section 43(a). *E. g.,* Joshua Meier Company v. Albany Novelty Manufacturing Company, 236 F.2d 144, 147 (2d

competitor's trademark and packaging design is obviously intended to divert business by misinforming the consumer and, accordingly, the courts have long enjoined passing off of a seller's goods as the goods of another. Croft v. Day, 7 Beav. 84, 88, 49 Eng.Rep. 994, 996 (Ch. 1843); see Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774, 780–783 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); Norwich Pharmacal Company v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); Corning Glass Works v. Jeannette Glass Company, 308 F.Supp. 1321, 1325 (E.D.N.Y.), aff'd 432 F.2d 784 (2d Cir. 1970).

The district court found that Lander had "deliberately packaged [its Sutton product] in deceptively similar containers with the name Sutton and the distinctive design under the name." In addition to the deceptive packaging, Lander marketed the deodorant by identifying itself in its advertising fliers as "the Sutton boys." Sutton Cosmetics (P.R.), of course, was already using the Sutton name and the distinctive Sutton mark and packaging which had been popularized by Schering and, before it, by Sutton Cosmetics, Inc. Potential consumers were unable to differentiate between Sutton Cosmetics (P.R.)'s Sutton deodorant and Lander's Sutton deodorant.

As the first bona fide user of the abandoned Sutton mark, Sutton Cosmetics (P.R.) had acquired trademark rights in that mark, 3 Callmann, Unfair Competition, Trademarks and Monopolies § 79.4, at least in the areas in which it had first used the Sutton name, Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916). While Lander and Sutton Cosmetics (P.R.) were equally free to attempt to capture the mark to their own use after Schering had abandoned it, Sutton Cos-

metics (P.R.) had the natural advantage since Schering's sales to Sutton Cosmetics (P.R.) put it in the position to make immediate sales of Sutton products. And, as the evidence adduced at the hearing indicates, Sutton Cosmetics (P.R.) was easily able to establish priority of use in Puerto Rico, Dade County, Florida, and metropolitan New York City.

■■ Since Sutton Cosmetics (P.R.) was the first user of the Sutton name, it had the right to use the mark unadorned. Later entrants into the markets in which Sutton Cosmetics (P.R.) was selling could use the name, if at all, only if they sufficiently distinguished it from Sutton Cosmetics (P.R.)'s mark so that the public could distinguish between the products of different manufacturers. See Smith v. Chanel, Inc., 402 F.2d 562 (9th Cir. 1968); Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc., 299 F.2d 33 (2d Cir. 1962). Lander's failure to distinguish its mark from Sutton Cosmetics (P.R.)'s was an obvious attempt to appropriate to itself the Sutton name already appropriated by Sutton Cosmetics (P.R.). Since the evidence showed that Lander had deliberately attempted to pass off its goods as the Sutton goods already on the market, the district court properly exercised its discretion, see Packard Instrument Co. v. Ans, Inc., 416 F.2d 943 (2d Cir. 1969); Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir. 1966); Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir. 1962), in preliminarily enjoining Lander from making competitive sales under the Sutton name. See Jacobs v. Beecham, 221 U.S. 263, 31 S.Ct. 555, 55 L.Ed. 729 (1911).

■ The preliminary injunction issued by the district court enjoined Lander from making any use of the mark "Sutton" in its sales of cosmetics or toiletries. A preliminary injunction under

---

Cir. 1956); L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649 (3rd Cir. 1954); see Derenberg, Federal Unfair Competition at the End of the First Decade of the Lanham Act, 32 N.Y.U.L.Rev. 1029 (1957).

section 43(a) of the Lanham Act will issue only on a showing of a clear likelihood of success on the merits and irreparable injury, Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969), and Sutton cannot be irreparably injured by Lander's sales in markets in which Sutton does not itself sell. Accordingly, we hold that the order must be modified to encompass only Puerto Rico, Dade County, Florida, and metropolitan New York City,[5] and any other areas in which the district court finds that Sutton Cosmetics (P.R.) was making sales at the time of the suit.

Our approval of the grant of the preliminary injunction in no way decides what permanent relief may be appropriate. Lander is, of course, entitled to full reconsideration after a plenary hearing. All we now hold is that it was not an abuse of discretion for the district judge to issue a preliminary injunction until there had been a fuller development of the facts and a further opportunity for consideration of the difficult legal questions after a plenary hearing. There are few areas of the law with as little precedent as that which we face here: two companies fighting for possession of a well-advertised, but abandoned trademark in an evident attempt for each to pass itself off as the abandoning company.[6] The dissenting opinion demonstrates some of the difficulties of the unusual situation. Thus we suggest a few general principles for consideration by the district court at the plenary hearing.

Sutton Cosmetics (P.R.)'s prior use of the mark entitled it to superior rights over Lander in those markets in which it had sold first. But surnames have frequently been denominated "weak" marks which may be used by more than one seller if there is appropriate differentiation. Whether, as a result of Schering's and Sutton Cosmetics, Inc.'s efforts, Sutton Cosmetics (P.R.)'s, Sutton's name may now be entitled to the protection as a strong mark is a question which the district court will have to consider, see Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938); W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871 (2d Cir. 1966); International Silver Company v. Roger Chromeware, Inc., 235 F.Supp. 216 (E.D.N.Y.1964); Howard Stores Corporation v. Howard Clothing, Inc., 308 F.Supp. 70 (N.D.Ga.1970); Thomson Industries, Inc. v. Nippon Thompson Co., 298 F.Supp. 466, 477–478 (E.D.N.Y.1968); Sterling Products Co. v. Crest Manufacturing Co., 314 F.Supp. 204 (E.D.Mich.1970). Similarly, it may be relevant to consider whether Lander may argue that "Sutton" is a weak mark in that no one connected with Sutton has that surname, Vanderburgh III, Trademark Law and Procedure (2d Ed. 1968); 3 Callmann, *supra*, at § 85.2, et seq.

Moreover, even priority of use does not give the first user exclusive trademark rights against "one who in good faith had adopted a like trade-mark . . . prior to the entry of the [first user] into the [second user's] market," United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 100, 39 S.Ct. 48, 52, 63 L.Ed. 141 (1918), and Lander may be found to be entitled to some rights under this doctrine.

5. We here define metropolitan New York to be the New York-Northeastern New Jersey Standard Consolidated Area including the five counties in New York City, Nassau County, Suffolk County, Westchester County and Rockland County in New York State and Bergen, Essex, Hudson, Middlesex, Morris, Passaic, Somerset and Union in New Jersey. Bureau of the Budget, Standard Metropolitan Statistical Areas 1967. If the district court finds that Sutton Cosmetics (P.R.) has made sales in areas other than Puerto Rico, Dade County, Florida or metropolitan New York as here defined, the scope of the injunction may be expanded.

6. Lander and Sutton Cosmetics (P.R.) each have pending in the United States Patent Office an application for registration of the Sutton trademark, as does P. Daussa Corporation.

Usually actual notice of a mark's use to rival sellers has been held sufficient to bar their subsequent use of the mark. See United Drug Co. v. Theodore Rectanus Co., *supra*; Hanover Star Milling Co. v. Metcalf, *supra*; cf. Dawn Donut Company v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959). Here, however, where both users are attempting to exploit an abandoned, but well-known, trademark, it may be that sales by the second user in a market in which the first has not yet appeared are permissible. But cf. Derenberg, The Twenty-Third Year of the Administration of the Lanham Act of 1946, 60 Trademark Reporter 387, 406 (1970).

Finally, there even may be limitations upon the rights of the first user in that there should not be deception of the public, either as to the identity of the merchant with whom the customer is doing business, Browning King Co. of New York v. Browning King Co., 176 F.2d 105 (3rd Cir. 1949), or as to the quality of the product. *Cf.* Dawn Donut Co. v. Hart's Food Stores, Inc., *supra*.

Affirmed with directions to modify the decree.

HAYS, Circuit Judge (dissenting):

This case presents a novel question concerning the applicability of 15 U.S.C. § 1125(a) (1970). The majority applies principles of trademark and unfair competition law that were established to deal with circumstances significantly different from those we find here.

The essential facts are: Schering sold the bulk of its remaining inventory to Sutton (P.R.), released the manufacturer which supplied it with deodorant from an exclusive production contract, and formally abandoned the trademark "Sutton." After the abandonment, Sutton (P.R.) and Lander both sold deodorant under the name "Sutton." Sutton (P.R.) now claims that, because it was the first to sell deodorant under the "Sutton" name after Schering abandoned the trademark, it acquired a protectable interest in the designation "Sutton."

The majority agrees with this argument stating: "As the first bona fide user of the abandoned Sutton mark, Sutton Cosmetics (P.R.) had acquired trademark rights in that mark. . . ." In view of the fact that "Sutton" is a weak mark and is protectable only if a secondary meaning has been established, the proposition underlying the majority decision is that the first user of an abandoned mark acquires, merely by virtue of that first use, the secondary meaning associated with that mark which the abandoning party created. Neither authority nor policy justifies this result.

The majority cites 3 Callmann, Unfair Competition, Trademarks, and Monopolies § 79.4 (3d Ed. 1969). The cases cited in Callmann to support the proposition relied upon by the majority involved: (1) situations in which there was no finding of abandonment at all, Foss v. Culbertson, 17 Wash.2d 610, 136 P.2d 711 (1943) ("University"); Holmes v. Border Brokerage Co., 51 Wash.2d 746, 321 P.2d 898 (1958); International Free & Accepted Modern Masons v. Most Worshipful Prince Hall Grand Lodge, Free & Accepted Masons of Kentucky, 318 S.W.2d 46 (Ky.1958); Riverbank Laboratories v. Hardwood Prods. Corp., 165 F.Supp. 747 (N.D.Ill.1958); (2) situations in which there was abandonment and subsequent appropriation of a "strong" trade name, Seattle Street Railway & Municipal Employees Relief Ass'n v. Amalgamated Ass'n of Street Electric Railway & Motor Coach Employees of America, 3 Wash.2d 520, 101 P.2d 338 (1940) ("Seattle Railway Employees' Relief Association" and "Seattle Street Car Men's Relief Association"); Yellow Cab Co. of Biloxi, Inc. v. Checker Taxicab Owners' Ass'n, 233 Miss. 735, 103 So.2d 350 (1958) ("Checker Cab Company of Biloxi"); Norwich Pharmacal Co. v. Hoffman-La Roche, Inc., 180 F.Supp. 222 (D.N.J.1960) ("Treburon" abandoned; plaintiff adopted "Tricofuron"; defendant tried to adopt "Triburon"); (3) situations in which the appropriating user established a secondary

meaning for his use of a weak mark, Mohawk Sales Co. v. Silvers, 65 N.Y.S. 2d 609 (Sup.Ct. Queens County 1946); Barbizon Corp. v. Hollub, 41 N.Y.S.2d 117 (Sup.Ct.N.Y.County 1943); Kaplan v. Marcus, 81 N.Y.S.2d 432 (Sup.Ct. Kings County 1948); Sarasohn v. Andrew Jergens Co., 45 N.Y.S.2d 888 (Sup.Ct.N.Y.County 1943). The only other cited case, McKesson & Robbins v. Charles H. Phillips Chemical Co., 53 F. 2d 342, modified, 53 F.2d 1011 (2d Cir. 1931), cert. denied, 285 U.S. 552, 52 S. Ct. 407, 76 L.Ed. 942 (1932), is authority for the opposite result from that reached by the majority. This court held, 53 F.2d at 345, that as one company had abandoned the weak mark "Milk of Magnesia," six other companies that were selling the product under that designation were free to continue to do so. I have been able to find no authority for the proposition that the first user of an abandoned weak trademark automatically acquires the protection enjoyed by the former user who expended time and money establishing a secondary meaning for the mark.

Granting a corporation in the position of Sutton (P.R.) an "assured" market share by giving it the monopoly right to use the reputation and good will created by the extensive efforts of Sutton Cosmetics Inc. and Schering results in an unjustifiable limitation on competition. Moreover the position adopted by the majority contributes almost inevitably to misleading the consumers of the product. The majority relies heavily on the argument that Lander was attempting "to pass off its goods as the Sutton goods already on the market. . . ." That argument applies with equal force to a first user of any abandoned mark, and in this case to Sutton (P.R.). The purpose of the use is to lead consumers to believe that the item sold under the familiar name is the same item as that formerly produced by the abandoning company. But the consumer has no assurance that the item he purchases, because he associates the name with a particular trait or standard of quality, will in fact have that trait or standard.

Lander is not attempting to pass off its product as that manufactured by Sutton (P.R.). On the contrary, both Lander and Sutton (P.R.) are attempting to pass off their products as the product formerly produced by Schering. In these circumstances, and in view of the absence of controlling authority, there is no reason for allowing one competitor to appropriate the name and good will of a former manufacturer merely because it commenced its selling activities five months ahead of the other competitor.