**V. R. DUNN and Sylvia Dunn,**
**Appellees,**

v.

**SOUTHWEST ARDMORE TULIP CREEK**
**SAND UNIT and Mack Oil Company,**
**Appellants.**

**No. 47687.**

Court of Appeals of Oklahoma.
Division No. 1.

March 9, 1976.

Released for Publication by Order of Court
of Appeals April 1, 1976.

Ritter & McGuire, by Derril W. McGuire, Ardmore, for appellees.

Garvin, Bonney, Weaver & Corley by Ronald E. Corley, Duncan, for appellants.

REYNOLDS, Presiding Judge:

This is an appeal by Southwest Ardmore Tulip Creek Sand Unit and Mack Oil Company, a corporation, (defendants below) from a judgment granting a mandatory injunction and the award of $100.00 damages in favor of V. R. Dunn and Sylvia Dunn, (plaintiffs below). The judgment ordered the defendants to cease taking salt water from the water supply well in question, and ordered the removal of their equipment and restoration of premises to its original condition within thirty (30) days.

On August 8, 1955 plaintiffs purchased 110 acres of surface by means of "Deed to Surface Rights." The deed provided:

"This conveyance is made upon the express condition that none of the minerals or mineral rights in and to said land are conveyed hereby and the party of the first part hereby expressly excepts and reserves unto himself, his heirs, executors, successors, and assigns, all of the oil, gas, and all other minerals (whether produced from wells, quarries, or mines) in and under and that may be produced from the above described land together with the full and free right of ingress and egress at all times and with the free right to use so much of the surface of said land as may be reasonably necessary for the purpose of operating for and producing said minerals, and storing, handling, transporting, and mar-

keting the same, including the laying of pipe lines and building of power stations and tanks on said land, with the right to remove from said land at any time any or all of said improvements, *(including casing in wells)* placed thereon or therein in connection with the aforesaid operations. (Emphasis supplied.)

"Party of the second part agrees to relinquish party of the first part, his heirs, successors, and assigns, from all claims, and to release him from all damage or liability because of injury to persons or property occasioned by any such operation for and production of said minerals."

The plaintiffs purchased the surface subject to the right of the mineral owner to use so much of the surface as may be reasonably necessary for the purpose of operating and producing the minerals. In *Wilcox Oil Company v. Lawson,* 341 P.2d 591 (Okl.1959), Syllabus 1, the Supreme Court held as follows:

"The holder of a valid oil and gas lease has the right and privilege to go on the land and do all those things necessary and incidental to the drilling of wells, including the right to the use of the surface, and in the absence of a provision that lessee would be liable for growing crops, the only basis for recovery of damages is proof of wanton or negligent destruction, or that damages were to portion of land not reasonably necessary for oil and gas development."

See also *Indian Territory Illuminating Oil Co. v. Dunivant,* 183 Okl. 233, 80 P.2d 225 (Okl.1938).

When the plaintiffs purchased the 110 acres of surface rights, there was an additional burden on the land: a valid and subsisting oil and gas lease, dated in 1952. The oil and gas lease provided in part:

". . . Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the *right to draw and remove casing.*" (Emphasis supplied.)

The oil and gas lease was assigned to Stanolind Oil and Gas Company and has been continued in effect up to the date of trial. In 1956 lessee Stanolind entered into a waste water lease with plaintiffs, which lease provided a primary term of ten (10) years, with option to renew and extend for two consecutive periods of ten (10) years. The consideration was $100.00 for the primary term and each extension thereof. The lease was for the purpose of drilling a salt water disposal well and for the purpose of constructing and operating a salt water disposal plant to dispose of salt water produced from the land described and from other lands or leases. The amounts of salt water and the sources thereof, to be introduced into the salt water disposal plant and injected into the well, was at the discretion of the lessee.

The lease provided in Paragraph 5:

"It is understood and agreed that Lessee shall have full right and authority to remove all of its buildings, material, equipment, pipe lines, connections, structures and other facilities installed upon any and all of the land herein described and used in connection with said salt water disposal well, *including the casing in said well,* within a reasonable time following the termination of this Lease, Agreement and Permit for Salt Water Disposal. It is further agreed that Lessee shall, within a reasonable time following the termination hereof, clean and restore the above described premises to their original contour, as nearly as practicable." (Emphasis supplied.)

The well in question was drilled and cased by Stanolind's successor and sold to defendants in November, 1961. Shortly thereafter the well was converted from a salt water disposal well to a salt water supply well to be used for the secondary recovery of oil and gas by means of waterflooding.

On the 19th day of July, 1961, the Southwest Ardmore Tulip Creek Sand Unit, covering in part the property which

is the subject matter of this action, was validly created by Order No. 46,160 of the Corporation Commission of the State of Oklahoma. The Unit has been in existence from said date up to and including the date of trial. Mack Oil Company, the defendant, is the operator of the Unit.

■ Therefore, the defendants upon creation of the secondary recovery unit, became the operating lessee and had the right to use surface space for tanks, pumps, pipe lines, and other equipment. In fact, the lessee's rights to the surface are co-equal or superior to those of the surface owner. See Robinson, Rights and Burdens Under an Oil and Gas Lease, 20 Okla.Bar Journal 199 (1949).

■ The law is well settled in Oklahoma that a person who owns minerals in lands has the right to use water from the land as it is necessary to develop mineral rights. See *Holt v. Southwest Antioch Sand Unit, Fifth Enlarged,* 292 P.2d 998 (Okl.1956).

The defendants purchased the salt water well, and the casing in the hold. Under the terms of the oil and gas lease, and the formation of the secondary recovery unit, defendants had a right to drill a water well. Instead, they purchased one already in existence. The right existed to use the surface and take water that was necessary for the production of oil and gas. The Stanolind waste water lease was never assigned to defendants, no assignment was necessary because as operator of the lease, defendants had the rights and privileges necessary to use the surface and take water from a well it had purchased. Upon the creation of the unit the defendants had the right, independent of the waste water lease, to use the salt water well for the reasonable development of said unit.

The Supreme Court held in *Stuart v. Titus,* 400 P.2d 797 (Okl.1965) the following:

"1. The facts which will warrant granting relief for mandatory injunction must be clear, free from all reasonable doubt, and disclose irreparable injury to the complainant.

"2. The extraordinary remedy of permanent mandatory injunction compelling the alteration, destruction, or removal of property should be granted with great caution and should not be granted unless serious injury is being inflicted, or in all probability, will be inflicted."

In *Mid-Continent Pipe Line Company v. Emerson,* 396 P.2d 734 (Okl.1964), the Supreme Court quoted with approval *Montgomery v. Coleman-Nelson Gasoline Co.,* 130 Okl. 14, 264 P. 895 (Okl.1928), as follows:

"'The law is well settled that a court of equity will not interfere by injunction with the possession of a party for the purpose of transferring the possession to another.'

"See also *Bradley v. Renfrow,* 184 Okl. 25, 84 P.2d 430; *Midland Valley R. Co. v. Imler,* 101 Okl. 298, 225 P. 919; *Deskins v. Rogers,* 72 Okl. 274, 180 P. 691; and *Glasco v. School Dist. No. 22, McClain County,* 24 Okl. 236, 103 P. 687."

■ The defendants were in peaceful possession. Injunctive relief should not be granted to recover real property from one in possession. See *Griffith v. Coleman,* 192 Okl. 296, 135 P.2d 33 (1943); *Herron v. Lanthin,* 205 Okl. 221, 236 P.2d 692 (Okl.1951); *Pettit v. Vogt,* 495 P.2d 395 (Okl.1972). In an action to recover possession of real property, a plaintiff must establish the allegations of his petition. 12 O.S.1971, § 1142.

Therefore, the judgment of the trial court must be reversed.

REVERSED.

BOX and ROMANG, JJ., concur.