843 So.2d 102 (2003)
Douglas JOHNSON, Appellant,
v.
BAPTIST MEMORIAL HOSPITAL-GOLDEN TRIANGLE, INC., and Baptist Memorial Health Care Corporation, Appellees.
No. 2002-CA-00207-COA.
Court of Appeals of Mississippi.
April 15, 2003.
*103 Jim Waide, Tupelo, Attorney for Appellant.
John Wade Simmons, Paul E. Prather, Sylvia Rae Adams, Memphis, TN, Attorneys for Appellees.
Before KING, P.J., LEE, and IRVING, JJ.
IRVING, J., for the court.
¶ 1. Douglas Johnson sued Baptist Memorial Hospital-Golden Triangle (BMH-GT) and Baptist Memorial Health Care Corporation (BMHCC) for breach of a written contract that he entered into with BMH-GT. He alleged that the two corporations failed to give him the six-month notice required by his contract with BMH-GT before BMHCC demanded that he resign from his position as administrator.
¶ 2. BMH-GT and BMHCC filed separate motions for summary judgment which were granted by the Circuit Court of Lowndes County. In this appeal, Johnson alleges that the trial court erred in resolving factual issues when it found (1) that BMH-GT and BMHCC were separate corporations, (2) that Johnson's contract with BMHCC replaced his contract with BMH-GT, and (3) that BMHCC, as the parent corporation, did not assume or adopt the contract made between its subsidiary, BMH-GT, and Johnson.
¶ 3. We are unable to discern any basis for reversal; therefore, we affirm.

FACTS
¶ 4. Douglas Johnson was hired by BMH-GT on April 2, 1994, as an associate administrator. The terms and conditions *104 of his employment with BMH-GT were embodied in an agreement which Johnson signed. One of the terms of the BMH-GT agreement provided:
In the unlikely event that Mr. Mitchell [the administrator] found that your services were no longer needed at the hospital, he has agreed to provide a transactional period of up to six months in which you would be allowed to look for another position while still working at your job. If it were determined that you were guilty of a crime or an unethical or immoral act in association with your work, this provision would not apply.
The BMH-GT agreement did not contain a definite period of duration of employment.
¶ 5. Johnson later accepted a position of administrator with BMHCC and entered into an executive severance program agreement with BMHCC. The BMHCC agreement contained separate and distinct provisions regarding severance benefits.
¶ 6. After Johnson worked at BMHCC for approximately eight months, evidence surfaced that he had pursued a relationship with a subordinate worker. BMHCC gave Johnson the option to resign or be fired. He resigned.
¶ 7. Johnson initially filed his complaint against BMH-GT. He alleged that BMH-GT terminated his employment without complying with the contract provision which gave him six months for transition. BMH-GT answered that Johnson's employment with its corporation ended when he accepted and began employment with BMHCC, the parent corporation of BMH-GT. Johnson subsequently amended his complaint, adding the parent corporation, BMHCC, as a necessary party. He alleged that BMHCC was liable for his termination because BMHCC assumed the obligations of BMH-GT when it made Johnson its employee.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 8. Johnson contends that the circuit court erred when it granted summary judgment in favor of BMH-GT and BMHCC. He explains that "whether BMH-GT and BMHCC operate as a single business enterprise or whether there were two separate entities which agreed upon a novation, involves factual issues."
¶ 9. Because this Court recognizes each of Johnson's issues to be an attack on the lower court's grant of summary judgment, we shall address the issues together.
¶ 10. Our supreme court has repeatedly stated the standard of review for denials of motions for summary judgment:
Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a de novo standard of review of a lower court's grant or denial of a summary judgment and examines all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says to the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That *105 is, the non-movant should be given the benefit of the doubt.
McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002) (citing Heigle v. Heigle, 771 So.2d 341, 345(¶ 8) (Miss.2000))(citing McCullough v. Cook, 679 So.2d 627, 630 (Miss.1996)).
¶ 11. In considering the corporations' motions for summary judgment, the lower court reviewed both parties' pleadings, statements of undisputed facts, a number of depositions, affidavits and several related documents, including the BMH-GT agreement, the BHMCC executive severance program agreement, and 1999 W-2 Wage and Tax Statements from both BMH-GT and BMHCC. Following a review of these documents, the trial court concluded that there was no genuine issue of material fact and consequently granted the corporations' motions for summary judgment. Based upon our review of the evidence considered, we find that the grant of summary judgment was proper.
¶ 12. Johnson's argumentthat there is a genuine issue of material facthinges upon his belief and assumption that BMH-GT and BMHCC are a part of the same corporate structure. Therefore, based on their corporate relationship, he asserts that BMHCC was responsible for the six-month transition period that BMH-GT was contractually bound to give him. However, Johnson fails to present any evidence that the corporate entities are one and the same. Moreover, the corporations' liability is not dependent upon the establishment of a BMH-GT-BMHCC parent/subsidiary relationship. Therefore, even if this fact were in dispute, it is not fatal to the granting of the motions for summary judgment. The material fact is the identity of corporations, not the parent-subsidiary relationship. Johnson's burden is to show that he was an employee of BMH-GT at the time of his forced resignation or that BMHCC assumed responsibility for his contract with BMH-GT. He offered nothing but his belief, assumption and conjecture. This is not sufficient to withstand a motion for summary judgment.
¶ 13. In Simmons v. Thompson Machinery of Mississippi, Inc., 631 So.2d 798, 801 (Miss.1994), our supreme court stated, "The presence of fact issues in the record does not per se entitle a party to avoid summary judgment; the court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense, and the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact."
¶ 14. Mississippi has long followed the employment at-will doctrine where an employee may quit or be terminated from his job for good reason, bad reason, or no reason at all. Slatery v. Northeast Mississippi Contract Procurement, Inc., 747 So.2d 257, 259(¶ 5) (Miss.1999). Our State applies the employment at-will rule where there is no employment contract or where there is a contract which does not specify the term of the worker's employment. Perry v. Sears, Roebuck & Co., 508 So.2d 1086, 1088 (Miss.1987).
¶ 15. The BMH-GT agreement was only applicable to the position of associate administrator and was for no definite period of time. Thus, either Johnson or BMH-GT was free to end Johnson's employment as associate administrator at any time. Johnson exercised his right to terminate his employment relationship with BMH-GT and began employment with BMHCC as an administrator. By doing so, Johnson relieved himself and BMH-GT of any obligations under the BMH-GT agreement. Johnson did not offer any evidence that anyone with BMHCC told him *106 or represented to him that his contract with BMH-GT would be continued upon his assumption of duties with BMHCC.
¶ 16. We further point out that even if we were to find, for all the reasons cited by Johnson, that BMHCC assumed responsibility for the contact between Johnson and BMH-GT, Johnson still cannot prevail for two reasons. First, the BMH-GT contract allowed for Johnson's termination, without affording him the six-month transition period, upon a determination that he was guilty of a crime or an unethical or immoral act in association with his work. Johnson's personal relationship with the director of internal audit would prevent him from receiving the benefit of the six-month transition period. Second, it is clear to this Court that the BMHCC agreement deals so comprehensively with the same subject matter as the BMH-GT agreement as to be complete in itself; therefore, we would be constrained to find that it abrogates the BMH-GT agreement. See Opportunity, L.L.C. v. Ossewarde, 136 Idaho 602, 607, 38 P.3d 1258, 1263 (Idaho 2002).
¶ 17. The BMHCC agreement, known as the Executive Severance Program, contained the following provisions:
Concept
Eligible executives will be entitled to receive severance payments, continuation of certain group health and welfare benefit programs, and outplacement assistance upon a qualifying employment termination.
Eligibility
All executives recommended for participation by the President of BMHCC, and approved by the Committee will be eligible to participate in the Program....
An eligible executive shall commence participation in the Program as of the date the executive executes the Noncompetition and Confidentiality Agreement.
Severance Benefit Trigger
A participant in the Program shall receive severance benefits upon a qualifying employment termination. A qualifying employment termination means an involuntary termination without "cause," or a voluntary termination for "good reason."
For this purpose "cause" means the occurrence of one or more of the following acts:
(1) the conviction of the participant of a felony or other crime which causes demonstrable and serious injury to BMHCC (as determined by a court of law or by an administrative agency)....
(3) the willful, gross neglect by the participant of his or her employment responsibilities; the willful gross dereliction of his or her duties; or other willful grave misconduct by the participant.
As can be discerned from the foregoing provisions, the BMHCC agreement does not provide for a six-month transaction period.
¶ 18. In conclusion, we find that the trial judge did not err in granting Baptist Memorial Hospital-Golden Triangle and Baptist Memorial Health Care Corporation's motions for summary judgment. We reject Johnson's assertion that the trial judge decided material issues of fact. Johnson himself admits that "[t]here is no evidence that [BMHCC] adopted or assumed the obligations of [BMH-GT]," yet he contends that such a finding could be implied. It would indeed be a stretch to conclude that simply because a parent corporation hired an employee of one of its subsidiaries, the parent corporation had assumed the contractual arrangement between the employee and the subsidiary. *107 Since we find no merit in Johnson's allegations of error, we affirm the decision of the trial court.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND GRIFFIS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.