**Ilona WILKS Plaintiff**

v.

**FEDEX GROUND PACKAGE SYSTEM, INC.**
**Defendant**

**No. CIV. A. 3:04–CV–32BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

March 2, 2005.

James R. Mulroy, II, Craig A. Cowart, Lewis Fisher Henderson Claxton & Mulroy, LLP, Cynthia Chandler–Snell, FedEx Ground, for The defendant.

Louis A. Watson, Jr., Nick Norris, Watson & Heidelberg P.A., for The plaintiff.

## OPINION AND ORDER

BARBOUR, District Judge.

Before the Court is the Motion of Defendant Fedex Ground Package System, Inc. for Summary Judgment, filed November 19, 2004. Having considered the Motion, Response, Rebuttal, attachments to each and supporting and opposing authority, the Court finds the Motion is well taken and should be granted.

### I. Background and Procedural History

Plaintiff, an African–American female, sought employment with Pomerantz Staffing Services ("Pomerantz") as a delivery truck driver. Defendant has a contract with Pomerantz. Under the contract, Pomerantz provides Defendant with temporary delivery drivers on an as needed basis. Before any Pomerantz drivers are allowed to perform services for Defendant, they are required to attend a safety class. Defendant conducts all aspects of administering this safety class. The safety class is composed of both classroom and driving components. To provide delivery services for Defendant, a Pomerantz driver must pass both components of the safety class.

Defendant cited Plaintiff for failure to pass the driving component of the safety class, and refused to hire her as a contract driver of Pomerantz. Aggrieved by the decision of Defendant, Plaintiff brought the instant suit, alleging that Defendant is liable for the following four reasons: (1) discrimination on the basis of race under Title VII and 42 U.S.C. § 1981; (2) discrimination on the basis of sex under Title VII; (3) intentional infliction of emotional

distress; and/or (4) negligent infliction of emotional distress. Defendant moves for summary judgment on all four of Plaintiff's claims, as well as Plaintiff's claim for punitive damages. The claims are analyzed individually, *infra.*

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving par-

ty has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. Analysis

### III.A. Plaintiff's Claim for Racial Discrimination in Violation of Title VII and 42 U.S.C. § 1981 and Sexual Discrimination in Violation of Title VII

This is a refusal to hire case. Plaintiff alleges that Defendant discriminated against her on the basis of race, in violation of Title VII and 42 U.S.C. § 1981, and on the basis of sex, in violation of Title VII. Plaintiff's race discrimination claims are governed by the same standards applicable to claims under Title VII. *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281 n. 7 (5th Cir.2004) (citing *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000)).

▇▇▇ Plaintiff has presented no direct evidence of discrimination.[1] Therefore,

---

1. Plaintiff attempts to argue that a particular instance of direct evidence (and this is the

only "instance" she alludes to) of discrimination was when her supervisor showed her

the burden-shifting format of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies. Where, as here, a plaintiff attempts to prove her case by circumstantial evidence, the plaintiff must first make out a prima facie case of discrimination. To establish a prima facie case of discrimination in a refusal to hire case, Plaintiff must establish: (1) Plaintiff is a member of the protected class; (2) Plaintiff sought and was qualified for the position; (3) Plaintiff was rejected for the position; and, (4) the employer continued to seek applicants with Plaintiff's qualifications. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 354–55 (5th Cir.2001) (citing *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000)).

The issue in this case is whether or not Plaintiff was ever qualified to provide temporary driving services to Defendant. As a matter of company policy, Defendant does not hire those who cannot complete the safety course, nor does it hire convicted felons. Plaintiff was convicted on November 25, 1997, in the United States District Court for the Southern District of Mississippi for the felony of embezzling $4,000.00 from a prior employer, Omni-Bank. The problem in this case is that Defendant did not learn that Plaintiff was a convicted felon until the discovery phase of this case, i.e., at the time Defendant refused to hire Plaintiff, it was not aware she was a convicted felon.[2] Thus, as a

logical matter, at the time that Defendant refused to hire Plaintiff, the fact that she was, in fact, a convicted felon, was completely irrelevant to the decision not to hire her.

These facts require the application of *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), which held that when an employer fired an employee solely because of her age and then later discovered conduct by the employee that would have led to her discharge, the employee was not barred from seeking relief under the Age Discrimination and Employment Act. Unlike the defendant in *McKennon*, Defendant here disputes that it refused to hire Plaintiff for discriminatory reasons. Defendant argues it refused to hire Plaintiff because she could not pass the driving component of her safety course.

As such, the interpretation and application of *McKennon* in *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106 (5th Cir.1995) is applicable. *Kinetic*, a wrongful termination case, strongly implies that the relevant question in a refusal to hire case is whether the defendant would have hired the plaintiff had it known that the plaintiff was unqualified. *Id.* at 1108–09.

'Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been termi-

---

safety class a newspaper article chronicling a tragic event in which a female driver had a wreck and ran over a construction worker. Plaintiff argues that her supervisor, in front of the entire class, then asked her if she was the driver who killed this person. Plaintiff's Response to Defendant's Motion for Summary Judgment with Supporting Authorities, pp. 7–8, filed February 8, 2005. Assuming the story is true, this would constitute circumstantial evidence. Although this statement might exemplify what might be fairly termed as a lack

of tact, it requires one or more inferences to believe that it constitutes evidence of racial or sexual discrimination.

**2.** On the Contact/Driver Information sheet which Plaintiff submitted to Defendant, she answered "no" when asked if she had ever been convicted of a felony or misdemeanor. Memorandum of Authorities in Support of Defendant's Motion for Summary Judgment, p. 5, filed November 19, 2004.

nated on those grounds alone if the employer had known of it at the time of the discharge.' [Defendant] presented no such evidence. *Rather, it contends that the relevant question is whether it would have hired [plaintiff] had it known he did not have a college degree [i.e., the plaintiff was not qualified for the position].* As proof thereof, it cites [plaintiff's] testimony that he falsified the application because he felt such would be a requirement for getting hired. This is not sufficient; to hold otherwise would eviscerate *McKennon. We are persuaded that the pertinent inquiry, except in refusal-to-hire cases, is whether the employee would have been fired upon discovery of the wrongdoing, not whether he would have been hired in the first instance.* The rationale underlying consideration of after-acquired evidence is that the employer should not be impeded in the exercise of legitimate prerogatives and the *employee should not be placed in a better position than he would have occupied absent the discrimination.*

*Id.* To allow Plaintiff to maintain her action would allow her to potentially be put in a better position than she would be absent the alleged discrimination (which Defendant highly disputes). Because of this, the Court finds that Plaintiff cannot maintain an action for either race or sex discrimination.

The Court understands that there are countervailing considerations. For instance, Plaintiff argues that such a ruling would allow (or even encourage) Defendants to simply go on fishing expeditions in discovery in search of anything that they might use as a hindsight justification for why they would not have hired a particular plaintiff in the first place, had they known of the disqualification. There is also some guiding authority for the theory

that "[a]llowing the use of after-acquired evidence as a complete defense in an employment discrimination case would have the perverse effect of providing a windfall to employers who, in the absence of their unlawful act and ensuing litigation, would never have discovered an employee's wrongdoing," and, therefore, the after-acquired evidence should only be relevant as a possible limitation on damages, but not a complete bar. 45C Am.Jur.2d Job Discrimination § 2389 (2004).

The finding of the Court is motivated by its earlier stated reasoning as well as by logical responses to the countervailing considerations listed directly above. One, Plaintiff was convicted of a serious offense in the form of embezzlement. Two, had Defendant known of this prior conviction, it would have never hired her. Thus, whether one views the use of the after-acquired evidence as a complete bar to recovery, or simply as a limitation on damages, the outcome is the same, as Plaintiff suffered no damages because she would have never been hired in the first place. Third and lastly, to allow Plaintiff any recovery in this instance would allow her a windfall solely because of her dishonesty on the Contact/Driver Information Sheet.

Therefore, Plaintiff cannot make out a prima facie case for racial discrimination under Title VII and 42 U.S.C. § 1981, nor can Plaintiff make out a prima facie case of sexual discrimination under Title VII. As such, Defendant's Motion for Summary Judgment on both of these claims is well taken and is granted.

### III.B. Plaintiff's Claim for Intentional Infliction of Emotional Distress

 Plaintiff cites several grounds as reasons why Defendant is liable for intentional infliction of emotional distress. Specifically, Plaintiff argues that Defendant caused the following emotional injuries:

(1) Plaintiff had to uproot her son and move from place to place; (2) Plaintiff did not have enough money to adequately take care of her son; (3) Plaintiff did not have food sometimes; and (4) Plaintiff sometimes had to donate plasma to buy her son something to eat.

In Mississippi, "meeting the requisite elements of a claim for intentional infliction of emotional distress 'is a tall order...,' and 'does not ordinarily lie for mere employment disputes.'" *Alack v. Beau Rivage Resorts, Inc.,* 286 F.Supp.2d 771, 776 (S.D.Miss.2003) (citing *Jenkins v. City of Grenada,* 813 F.Supp. 443, 446–47 (N.D.Miss.1993)). For Plaintiff to establish a claim for intentional infliction of emotional distress, she must produce evidence of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola v. Chevron U.S.A., Inc.,* 872 So.2d 79, 85 (Miss.App.2004) (citing *Brown v. Inter–City Fed. Bank,* 738 So.2d 262, 264 (Miss.App.1999)). An action for intentional infliction of emotional distress will not extend to "...mere insults, indignities, threats, annoyances, petty oppression, and other trivialities," and the claimant must demonstrate that he is more than simply "very upset" as a result of the complained of actions. *Id.; Langston v. Bigelow,* 820 So.2d 752, 757 (Miss.App.2002) (holding that claimant had shown no grounds for recovery when he stated he was "very upset" and suffered "restless nights" and "sleep problems" for a year as a result of the complained of activity).

Plaintiff cites no evidence on the record which will support a claim for intentional infliction of emotional distress. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's claim for intentional infliction of emotional distress is well taken and is granted.

### III.C. Plaintiff's Claim for Negligent Infliction of Emotional Distress

In support of Plaintiff's claim for negligent infliction of emotional distress, she cites the same types of emotional damages as she uses to support his claim for intentional infliction of emotional distress. In Mississippi, a plaintiff may recover for emotional injury proximately resulting from negligent conduct only if the alleged injury was reasonably foreseeable by the defendant. *Strickland v. Rossini,* 589 So.2d 1268, 1275 (Miss.1991). None of the grounds cited were reasonably foreseeable to Defendant when Defendant decided that Plaintiff was not qualified for the job. Therefore, Defendant's Motion for Summary Judgment is well taken and is granted.

### III.D. Plaintiff's Claim for Punitive Damages

Plaintiff's claim for punitive damages has been rendered moot by the findings in this Opinion and Order. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's claim for punitive damages is denied as moot.

### IV. Conclusion

IT IS THEREFORE ORDERED that the Motion of Defendant Fedex Ground Package System, Inc. [27–1], is well taken and is granted.

IT IS FURTHER ORDERED that a Final Judgment shall be entered on this day reflecting the final resolution of this matter, and the dismissal of this action, with prejudice.